[Cite as *Patterson v. Adleta, Inc.*, 2018-Ohio-3896.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| CHARLES PATTERSON, | : | APPEAL NOS. C-180015 |
| | | C-180026 |
| and | : | TRIAL NO. A-1603454 |
| CHRISTINA PATTERSON, | : | *O P I N I O N.* |
| Plaintiffs-Appellants, | : | |
| vs. | : | |
| ADLETA, INC., | : | |
| Defendant-Appellee. | : | |

Civil Appeals From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  September 26, 2018

*Clements, Taylor, Butkovich & Cohen LPA Co.* and *Catharin R. Taylor*, for Plaintiffs-Appellants,

*Reminger Co., L.P.A.*, and *Timothy B. Spille*, for Defendant-Appellee.

**Mock, Presiding Judge.**

{¶1}   Plaintiff-appellant Charles Patterson severely injured his leg after falling from a ladder.  At the time of his injury, Patterson had been assigned by his temporary employment agency to work at Lykins Oil, delivering fuel to an above-ground seven-foot-high split oil tank ("the split tank") located on the property of defendant-appellee Adleta, Inc.  Employees of Lykins Oil delivered fuel to the split tank twice a day, six days a week, and had being doing so for many years without any injuries reported.  Patterson had made two previous deliveries to the split tank prior to his injury.  Patterson maintained that Adleta provided an A-frame step ladder ("the step ladder") for the employees of Lykins Oil to use when delivering the fuel.[1] In order to access the fuel ports at the top of the tank, Patterson had to lean the step ladder, in the closed position, against the tank.  The ground surrounding the tank was covered in gravel.  Patterson testified in his deposition that as he began to climb, the base of the ladder shifted in the gravel and he fell.  He also testified that he was familiar with A-frame ladders and had used them regularly in previous employment and that he had placed the ladder in a position that he felt was safe, without input from others, on the day of the injury.

{¶2}   Charles Gross, an employee of Lykins Oil, who was training Patterson on the day of his injury, testified in his deposition that he had no personal knowledge of how or why Patterson fell from the ladder, but noted that the ladder was still standing against the tank after Patterson fell.  Gross testified that after Patterson's

---

[1] The record reflects that a ladder had been lying near the split tank on Adelta's property for years and that the ladder was consistently used by the employees of Lykins Oil to deliver fuel to the split tank even though a ladder was provided by Lykins Oil on some of its trucks for its employees to use.

injury, he had examined the ladder, positioned it where he believed it was safe to climb and completed the fuel delivery. He testified that he had believed that Adleta had provided the ladder for use in delivering the fuel, but that there was no requirement to get permission from an Adleta employee prior to using the ladder. He also testified that he did not seek instructions from anyone at Adleta about how to use the ladder, and he thought that the employees of Lykins Oil were in the best position to determine how to deliver the fuel to the split tank.

{¶3} Tim Plurien, the assistant operations manager at Adleta at the time of Patterson's injury, testified in his deposition that an A-frame step ladder is intended to be "opened up with all four feet on the ground" and that the step ladder could not be used as it was intended when delivering fuel to the split tank.

{¶4} Patterson, and his wife, Christina, sued Adleta for negligence and loss of consortium. Adleta moved for summary judgment, arguing that because Patterson had been engaged in an inherently dangerous activity when he was injured—climbing a ladder to deliver fuel into the split tank—Adleta was absolved of any duty of care it owed to Patterson, who was a business invitee on Adleta's property. The trial court agreed, and entered summary judgment in favor of Adleta.

{¶5} The Pattersons now appeal, contending in a single assignment of error that the trial court erred by granting summary judgment in favor of Adleta. For the following reasons, we affirm.

{¶6} We review a trial court's grant of summary judgment de novo. *Village of Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 671 N.E.2d 241 (1996). Under Civ.R. 56(C), summary judgment is proper when (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and

(3) reasonable minds, after construing the evidence most strongly in favor of the nonmoving party, can only conclude adversely to that party. *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998).

{¶7}    The Pattersons alleged in their complaint that Adleta negligently failed to provide Charles Patterson with a safe means to access the intake port of the split tank on Adleta's property.    In order to establish a cause of action for negligence, a plaintiff must demonstrate that (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; and (3) the plaintiff suffered injury proximately caused by the defendant's breach of duty. *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984).    If the defendant demonstrates that the plaintiff will be unable to prove any one of the foregoing elements, the defendant is entitled to judgment as a matter of law. *Feichtner v. Cleveland*, 95 Ohio App.3d 388, 642 N.E.2d 657 (8th Dist.1994).

{¶8}    When the alleged negligence occurs in the premises-liability context, the applicable duty is determined by the relationship between the landowner and the plaintiff. *Lang v. Holly Hill Motel, Inc.*, 122 Ohio St.3d 120, 2009-Ohio-2945, 909 N.E.2d 120, ¶ 10.    Here, it is undisputed that Patterson was a business invitee of Adleta. Generally, the owner of a premises has a duty to exercise ordinary care toward the business invitee, and to maintain the premises in a safe condition. *Id.*, citing *Light v. Ohio Univ.*, 28 Ohio St.3d 66, 68, 502 N.E.2d 611 (1986).

{¶9}    However, in negligence actions involving inherently dangerous work, the owner of a premises does not owe a duty to a business invitee. *Wellman v. East Ohio Gas Co.*, 160 Ohio St. 103, 113 N.E.2d 629 (1953), paragraph two of the

syllabus. The business invitee is presumed to know and appreciate that there is a danger surrounding the performance of the work it has undertaken. *Id.*

{¶10} An exception to this rule exists where the owner "actively participates" in the work being performed by the business invitee. *Hirschbach v. Cincinnati Gas & Elec. Co.*, 6 Ohio St.3d 206, 452 N.E.2d 326 (1983).

## Inherently Dangerous

{¶11} Patterson first contends that there is a genuine issue of material fact as to whether he was engaged in an inherently dangerous activity when he situated the ladder on a gravel parking lot and climbed up the ladder to deliver fuel to the split tank. We disagree.

{¶12} The Second, Fifth and Eighth Appellate Districts have held that climbing and descending a ladder is an inherently dangerous activity. *See Hackney v. Ward*, 2d Dist. Montgomery Nos. 26175 and 26233, 2014-Ohio-4413, ¶ 14; *McPherson v. Total Car Express, Inc.*, 2015-Ohio-5251, 54 N.E.3d 713, ¶ 19 (5th Dist.); *Alapi v. Colony Roofing, Inc.*, 8th Dist. Cuyahoga No. 83755, 2004-Ohio-3288, ¶ 33. But the Second Appellate District has also noted that an owner is not insulated from liability for all accidents involving a ladder. Specifically, in *Cracraft v. Dayton Power & Light Co.*, 2d Dist. Montgomery No. 26808, 2016-Ohio-3272, ¶ 24, the court stated:

> [s]imply because [a business invitee] knows the risks
> inherent in the tasks he or she undertakes (and cannot
> recover from the owner for injuries attendant to those
> risks) does not mean that an owner is insulated from
> injuries caused by particular or heightened risks above

those normally inherent in the activity. * * * For example, if the owner knows or should have known of a particular risk related to the use of a ladder that it provides on a worksite—a risk that would not be anticipated in the typical use of a ladder—there may be a factual issue as to whether the owner breached a duty of care. For example, if the owner provides a ladder that it knows to have a loose rung, or knows of a fixed ladder at a work site onto which oil drips, the owner may have a duty to warn the [business invitee] of the risk if it were not open and obvious.

{¶13} Here, Patterson acknowledges that even assuming there are inherent dangers in climbing a ladder, i.e., falling from the ladder due to the ladder shifting or the climber losing his or her balance, it was not those dangers that caused his injury. Instead, he contends that his injury resulted from Adleta providing an inappropriate ladder, i.e., an A-frame step ladder, for him to use to deliver fuel to the split tank. Patterson argues that he could not safely deliver fuel to the split tank using the step ladder because it had to be used in a closed position, a position in which the ladder is not intended to be used. But this was not a hidden or latent defect in the ladder. In fact, it was open and obvious that using a ladder in a manner in which it is not intended is dangerous. Given that Patterson testified that he was familiar with A-frame ladders and had used them in previous employment, and that it was "common sense" how to use that type of ladder, reasonable minds can only conclude that

Patterson used the step ladder in the closed position aware of the inherent risks in doing so.

{¶14} Because there are dangers inherent in climbing a ladder and because there was no latent or hidden defect in the ladder that only Adleta was or should have been aware of, we hold that Patterson has not demonstrated a genuine issue of material fact regarding whether Adleta owed him a duty of care with respect to the work he had undertaken.

## Active Participation Exception

{¶15} As noted above, an exception to the *Wellman* rule of nonliability in negligence cases involving inherently dangerous work exists where the premises owner had actively participated in the work being performed. *See Hirschbach*, 6 Ohio St.3d 206, 452 N.E.2d 326, at syllabus. For purposes of establishing liability to the injured business invitee, "active participation" means that the owner (1) directed the activity resulting in the injury; (2) gave or denied permission for the critical acts that led to the injury; or (3) retained or exercised control over a critical variable in the workplace that caused the injury. *McPherson*, 2015-Ohio-5251, 54 N.E.3d 713, at ¶ 20.

{¶16} The parties agree that Adleta did not direct the activity resulting in the injury. But Patterson contends that because Adleta provided the ladder for Patterson's use, genuine issues of material fact arise as to whether Adleta gave permission for the critical acts that led to the injury and whether Adleta retained control over a critical variable in the workplace that caused the injury. We are unpersuaded.

{¶17} A premises owner does not actively participate in a contractor's work when it provides a ladder but does not control how the ladder is used. *See id.* at ¶ 22. Here, the record does not demonstrate that Adleta required Patterson to use a specific ladder in delivering the fuel nor did Adleta instruct Lykins Oil employees on how to use a ladder. Patterson testified that he placed the ladder in the position he thought was the safest in order to deliver the fuel. Further, Gross, Patterson's trainer, testified that there was no requirement that Lykins Oil employees seek permission from Adleta to use a specific ladder and that the delivery employee was in the best position to determine how to safely deliver the fuel to the split tank. Given the foregoing, we hold that there is no genuine issue of material fact as to whether Adleta participated in Patterson's work and conclude that the active-participation exception to the *Wellman* rule of nonliability does not apply here.

{¶18} Because Patterson has not demonstrated that there was a genuine issue of material fact as to whether Adleta owed any duty to Patterson, we cannot say that the trial court erred by entering summary judgment in favor of Adleta.

{¶19} Accordingly, we overrule the assignment of error and affirm the trial court's judgment.

Judgment affirmed.

CUNNINGHAM and MILLER, JJ., concur.

Please note:
The court has recorded its own entry on the date of the release of this opinion.